# In the United States Court of Federal Claims

LAKESHORE HARBOUR TOWNHOUSES
CONDOMINIUM et al.,
                    *Plaintiffs,*

v.

THE UNITED STATES,

                    *Defendant.*

Consol. No. 22-902L
(Filed December 24, 2024)

Michael J. Smith, Stewart, Wald & Smith, LLC, St. Louis, MO, for plaintiffs.

John K. Heise, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Granting the government's motion for partial summary judgment and
denying Lakeshore Harbour's motion for partial summary judgment**

**SILFEN,** *Judge.*

Lakeshore Harbour Townhouses Condominium, along with other plaintiffs, seeks compensation from the United States for an alleged Fifth Amendment taking authorized by the National Trails System Act, 16 U.S.C. § 1247(d). The plaintiffs argue that the government took parts of their properties when it set aside a two-mile segment of former railroad in Muskegon, Michigan, as a recreational trail.

Only Lakeshore Harbour's claim is at issue in this motion. The discovery process revealed a dispute over whether Lakeshore Harbour held title to its claimed segment of the rail corridor at the time of the alleged taking. The parties filed cross-motions for partial summary judgment on that question. The government argues that Lakeshore Harbour did not own the segment because

1

someone else—Cole's Quality Foods—owned the segment and never sold it to Lakeshore Harbour. Lakeshore Harbour argues that Cole's sold Lakeshore Harbour the segment. According to Lakeshore Harbour, its parcel, as described in its deed, abuts the rail corridor, and under Michigan law's centerline presumption, when a party sells land abutting a corridor like a rail line, it presumptively also sells the land up to the centerline of that corridor.

Assuming the centerline presumption applies to railroads, the government has rebutted the presumption here. Lakeshore Harbour has not established that it owned the segment of the rail corridor abutting its property. The government has established that Lakeshore Harbour did not own the segment. There is no genuine issue of material fact. The government is entitled to partial summary judgment.

## I. Background

In the late 1800s, a railroad company, the predecessor of CSX Transportation, Inc., acquired an easement over a corridor of land in Muskegon, Michigan. ECF No. 20 at 2 [¶3]; ECF No. 42 at 18, 20; ECF Nos. 42-11, 42-12; ECF No. 54 at 9 n.5.

In the late 1970s and early 1980s, Cole's bought land on both sides of and encompassing part of the rail corridor. ECF Nos. 54-7; 54-8; 54-10. Cole's began to develop a marina condominium project on part of that land. ECF No. 54-16.

In 1990, Cole's sold part of its property to Lakeshore Harbour. ECF No. 20 at 3 [¶6]; ECF No. 42-13 at 7-95 (master deed). The relevant land is shown in the figure below, with the part that was ultimately sold to Lakeshore Harbour outlined in blue and white. The land that Cole's retained for its marina condominium project is northwest of the rail corridor (to the left of the corridor in the figure), while the land that Cole's sold to Lakeshore Harbour is southeast of the rail corridor (to the right of the corridor in the figure).



ECF No. 42-16 at 4; *see* ECF No. 42 at 12 (describing the image). The Lakeshore Harbour parcel abuts land subject to the railroad easement. ECF No. 20 at 3 [¶6].

At the same time, Cole's also granted utility easements over its property for the benefit of Lakeshore Harbour's parcel, and Cole's sold a portion of its land to unrelated parties. ECF Nos. 54-12; 54-13; 54-14; 54-15; *see also* ECF No. 54-9.

In 1994, the parties agreed to an amended deed, which revised the size of the conveyance, added an expansion property, and granted an additional utility easement for Lakeshore Harbour's benefit. ECF No. 42-14 at 2-12. The amended deed describes the boundaries of the updated parcel. *Id.* It outlines the parcel with particular latitude and longitude lines, gives a precise area of 2.02 acres, and explains that the parcel extends "to the southeasterly right-of-way line of the CSX Railroad":

> That part of lot 6, block 581, of the revised plat of 1903 of the City of Muskegon as recorded in liber 3 of plats, on page 71, described as beginning at a point on the southwesterly line of lot 6 (also being the southwesterly line of block 581), that is 170.00 feet north 36º 16' 55'' west from the southeast corner of block 581; thence along the southwesterly line of lot 6, block 581, north 36º 16' 55''

3

west 188.87 feet to the southeasterly right-of-way line of the CSX Railroad; thence the following three (3) courses being along said right-of-way line, thence north 37º 21' 45" east 120.00 feet; thence north 41º 56' 11" east 150.48 feet; thence north 37º 21' 45" east 38.32 feet; thence south 52º 40' 01" east 73.01 feet; thence south 45º 22' 51" east 235.04 feet; thence south 40º 57' 59" west, parallel with and 50.00 feet northwesterly of the northwesterly right-of-way line of lakeshore drive, 146.50 feet to a point on a line that is 15 feet northeasterly of and parallel to the northeasterly line of lot 2, block 581; thence north 49º 02' 01" west, along said line, 50.00 feet; thence south 40º 57' 59" west 114.92 feet to the westerly corner of lot 3, block 581; thence north 49º 02' 01" west 50.00 feet; thence south 52º 22' 03" west 79.96 feet to the point of beginning. Containing 2.02 acres.

ECF No. 42-14 at 10. A map from the survey for the trail use agreement deed overlaid on top of the image of the land is shown below, with descriptions of some of the lines from the deed.



ECF No. 42-16 at 6; *see* ECF No. 42 at 12 (describing the image).

In 1996, Cole's also transferred a small part of its land northwest of the rail corridor to Lakeshore Harbour, "to be used for a swimming pool." ECF No. 46-1. The pool is shown in both figures above, to the northwest, or left, of the rail corridor. The deed described the boundaries of

the property, part of which ran "parallel with and 33 feet Northwesterly of (measured perpendicular) the Northwesterly right of way line of the … Railroad." *Id.* at 3. In other words, that parcel had a boundary that neither included nor abutted the rail corridor.

In 2016, Cole's took a mortgage out on its property, including part of block 581, southeast of the rail corridor. ECF No. 54-17 at 2-3, 14-15. The mortgage excluded Lakeshore Harbour's parcel but included the land subject to the railroad easement. *Id.* at 14-15 (legal description of the mortgage property excepting the "part of Lot 6, Block 581 … described as beginning at a point on the Northeasterly line of Block 581 … to the Southwesterly line, 188.87 feet to the Southeasterly right-of-way line of the CSX Railroad; thence North 37 degrees 21 minutes 45 seconds East, along said right-of-way line, 120.00 feet, thence North 41 degrees 56 minutes 11 seconds East, 150.48 feet"). From at least 1997 through 2023, Cole's was assessed for and paid semi-annual property taxes on land that included the segment of the rail corridor subject to the railroad easement. ECF No. 54-19.

In June 2022, the railroad filed a notice with the United States Surface Transportation Board that it was going to abandon and discontinue service on a section of rail line that included the parcel discussed above. ECF No. 42-1. The railroad company intended to "sell a 2-mile portion of the [railroad easement] … to the City of Muskegon, for trail use" under the National Trails System Act and its regulations. *Id.* at 4. In July 2022, the railroad and the city agreed to convert the idle two-mile segment of the rail corridor into a recreational trail and sought permission from the Board. ECF No. 42-2; *see Preseault v. I.C.C.*, 494 U.S. 1, 6-7 (1990). The Board granted the request on August 9, 2022. ECF No. 42-3. The city and the railroad entered into an agreement implementing the Board's notice and established the recreational trail soon after. ECF No. 42-4. The Board assumed jurisdiction over the possible future use of the corridor, which "prevent[ed]

the operation of state [property] laws that would otherwise come into effect upon abandonment." *Caldwell v. United States*, 391 F.3d 1226, 1229 (Fed. Cir. 2004).

A week later, plaintiffs brought this suit, seeking compensation under the Fifth Amendment for an alleged taking that occurred by operation of the National Trails System Act. ECF No. 20.[1] Plaintiffs allege that, but for the Act and the Board's actions, the railroad would have been abandoned, and plaintiffs "would have the exclusive right to physical ownership, possession, and use of their property free of any easement." *Id.* at 8 [¶30]. Thus, plaintiffs allege that under the Fifth Amendment's Takings Clause they are entitled to compensation: the fair market value in August 2022 of the portion of their property allegedly taken by the United States, plus damages and fees. *Id.* at 8-9 [¶¶30-34].

After the government filed its answer, the parties agreed to proceed with the valuation process and to try to settle plaintiffs' claims. ECF No. 25. While reviewing settlement proposals, the government identified a title issue for just one of the plaintiffs, Lakeshore Harbour. ECF No. 33 at 1-2; ECF No. 35 at 1. The court held a status conference, and the parties agreed to file cross-motions for partial summary judgment on Lakeshore Harbour's title. ECF No. 39; ECF No. 40. The parties stipulated that Lakeshore Harbour owned parcel no. 61-24-515-000-0000-00, the parcel outlined in the images above, on the date in August 2022 that the Board issued the relevant notice (ECF No. 41) but disagreed on whether Lakeshore Harbour held title to the adjacent part of the rail corridor, subject to the railroad easement. *Compare* ECF No. 42 *with* ECF No. 54.

---

[1] There are currently five other cases pending in this court that concern the same two-mile segment of rail line and arise from the same Board decision. One of those cases, *Vail v. United States*, No. 23-2086, is consolidated with this case. This opinion primarily addresses the third amended complaint in this case, ECF No. 20, because it is the current complaint.

On cross-motions for partial summary judgment, the government asks the court to resolve only the title question; Lakeshore Harbour asks the court to resolve, more broadly, whether the government is liable for taking Lakeshore Harbour's property.

## II. Discussion

This court's jurisdiction is primarily defined by the Tucker Act, which provides the court with exclusive jurisdiction to decide specific types of monetary claims against the United States. *Kanemoto v. Reno*, 41 F.3d 641, 644 (Fed. Cir. 1994); 28 U.S.C. § 1491(a)(1). The Tucker Act grants the court "jurisdiction to render judgment upon any claim against the United States founded … upon the Constitution." 28 U.S.C. § 1491(a)(1). The Fifth Amendment's Takings Clause provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. The provision "does not prohibit the taking of private property, but instead places a condition on the exercise of [the government's] power" to take private property rights for public use. *First English Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304, 314 (1987). Because takings claims are "founded upon the Constitution," they are "within the jurisdiction of the Court of [Federal] Claims to hear and determine." *Knick v. Township of Scott*, 588 U.S. 180, 190 (2019) (quotation marks omitted).

"Whether a taking has occurred is a question of law based on factual underpinnings." *Stearns Co. v. United States*, 396 F.3d 1354, 1357 (Fed. Cir. 2005). To allege a taking, Lakeshore Harbour must establish (1) that it held a property interest at the time of the alleged taking and (2) that the government's actions amounted to a compensable taking of that property interest. *American Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004); *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (explaining that the first issue in rails-to-trails cases is who owned the land when the alleged taking occurred). The court determines the parties' property ownership under the law of the state in which the property sits, *Castillo v. United States*,

952 F.3d 1311, 1319 (Fed. Cir. 2020), in this case Michigan, "by analyzing the original deeds that conveyed the property" to the plaintiff, *Chicago Coating Co., LLC v. United States*, 892 F.3d 1164, 1167 (Fed. Cir. 2018).

The relevant time, when the alleged taking occurs, is when the Board issues a notice of interim trail use and authorizes a trail use agreement, *Ladd v. United States*, 630 F.3d 1015, 1023-24 (Fed. Cir. 2010), in this case August 2022.

When deciding a motion for summary judgment, a court must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rules of the Court of Federal Claims, Rule 56(a). Disputes over material facts preclude summary judgment. *Anderson*, 477 U.S. at 248. A fact is material if it could "affect the outcome of the suit under the governing law." *Id.* A dispute is genuine when the evidence could lead a factfinder to reasonably resolve that issue "in favor of either party." *Id.* at 250.

"The party seeking summary judgment has the initial burden of establishing that there is no genuine dispute as to any material fact." *8x8, Inc. v. United States*, 854 F.3d 1376, 1380 (Fed. Cir. 2017). When evaluating a summary-judgment motion, the court draws all justifiable inferences and resolves any significant doubt over the factual issues in the non-movant's favor. *Anderson*, 477 U.S. at 255. To defeat the motion, the non-moving party "must show an evidentiary conflict on the record; mere denials or conclusory statements are not sufficient." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987). On cross-motions for summary judgment, "each motion is evaluated on its own merits and reasonable inferences are resolved against the party whose motion is being considered." *Marriott International Resorts, L.P. v. United*

*States*, 586 F.3d 962, 968-69 (Fed. Cir. 2009) (Federal Circuit adopting the opinion of this court as its own). "[C]ross-motions do not change the requirement that all justifiable inferences must be drawn in favor of the losing party." *Murphy Exploration & Production Co. v. Oryx Energy Co.*, 101 F.3d 670, 673 (Fed. Cir. 1996).

If a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A. Lakeshore Harbour did not own the segment of the rail corridor adjacent to its property in August 2022

The parties agree that Lakeshore Harbour owned property abutting the rail corridor on the date of the Board's decision in August 2022. ECF No. 41. The parties' arguments focus on whether Lakeshore Harbour owned part of the rail corridor itself. ECF No. 42; ECF No. 54. There is no genuine issue of material fact; Lakeshore Harbour did not own part of the corridor because Cole's never conveyed it.

Lakeshore Harbour relies on Michigan's centerline presumption to argue that Cole's presumptively conveyed the segment of the rail corridor to Lakeshore Harbour when Cole's sold the adjacent parcel of land to Lakeshore Harbour. ECF No. 42 at 23-26. The government argues that the centerline presumption is unavailable because Michigan law applies it to streets but has not extended it to railroad rights-of-way. ECF No. 54 at 10. The government adds that, even if Michigan law extended the centerline presumption to railroads, the evidence—including deeds and tax records—rebuts the presumption. *Id.* at 11-14.

The Supreme Court of Michigan has held that a "conveyance of land bounded upon an accepted and opened public highway, street, or alley will pass to the grantee and his assigns the fee to the center of the highway, street, or alley, provided the grantor owns to the center and there

9

are no words in the deed showing a contrary intention, and further, that when a conveyance refers to a map or plat, … which represents lots as bounded by a street or alley and describes the lots conveyed by their numbers, such description is equivalent to express language in the deed giving the street or alley as a boundary." *Loud v. Brooks*, 241 Mich. 452, 454 (1928). That centerline presumption applies only to property that "actually abut[s]" a right-of-way. *Dickens v. Gordon*, 232 N.W.2d 707, 709 (Mich. App. 1975).

Michigan courts have not addressed whether the centerline presumption also applies to railroad rights-of-way. But a Michigan court has determined in another context that the "term 'highway' includes railroads." *Township of Bingham v. RLTD Railroad Corp.*, 576 N.W.2d 731, 733 (Mich. Ct. App. 1998).

Assuming, without deciding, that the centerline presumption applies to railroads, the government can rebut the centerline presumption in either of two ways: (1) by pointing to evidence from the master deed that Cole's did not intend to convey any more than the described parcel, that is, that Cole's did not intend to convey land going up to the centerline, or (2) by presenting evidence that the land subject to the railroad easement is owned by someone else, in this case Cole's. *Castillo*, 952 F.3d at 1320. The government has done both.

The deed conveying the parcel from Cole's to Lakeshore Harbour describes the boundaries of the parcel. ECF No. 42-14 at 10. The property reaches "to the southeasterly right-of-way line of the CSX Railroad" but does not include it. *Id*. Where a deed describes "definite monuments which fix the boundaries of a parcel of land conveyed by one or the other, such monuments should unquestionably control" over the centerline presumption. *Nordberg v. Todd*, 254 Mich. 440, 444-45 (1931).

Unlike the deed in *Loud*, the deed here does not rely on a map or lot and block numbers; it defines the parcel's precise boundaries by reference to the property lines, which do not include the land subject to the railroad easement. ECF No. 42-14 at 10; *cf. Loud*, 241 Mich. at 454; *Faulks v. Schrider*, 99 F.2d 370, 372-73 & n.5 (D.C. Cir. 1938) (listing cases across states, including Michigan, where the centerline presumption applied because the deed described the land by lot or block number). That description is sufficient to overcome the centerline presumption established in *Loud*. *See Nordberg*, 254 Mich. at 444. Further, here, no one disputes that the acreage described in the deed does not include the rail corridor. *Cf. id.* at 446 (explaining that fixed lines and monuments overcome "quantity," or acreage, where they disagree).

The government alternatively succeeds under the second prong: It has shown that someone else owned the land subject to the railroad easement. Even after Cole's sold Lakeshore Harbour the parcel of land that abuts the rail corridor, Cole's has continued to exercise its ownership over the rail corridor itself. Cole's paid property taxes on the rail corridor land for at least twenty-six years, including 2022 when the alleged taking occurred. ECF No. 54-19. Applying Michigan law, this court has held that, in addition to deeds, property "tax records are sufficient to establish a fee simple absolute" ownership of land. *Thompson v. United States*, 101 Fed. Cl. 416, 431 (2011).

Cole's also took out a mortgage on the rail corridor land. ECF No. 54-17. That mortgage expressly includes the rail corridor and excludes both Lakeshore Harbour's property and the property on which Cole's developed its marina condominium project on the northwest side of the rail corridor. ECF No, 54 at 13 & n.8 (citing ECF No. 54-17). The mortgage shows that Cole's treated its deeds to Lakeshore Harbour as not conveying the rail corridor land and only conveying land

next to that corridor. Taken together, the tax records and other evidence show that Lakeshore Harbour did not have title to the rail corridor land in August 2022 because Cole's owned it.[2]

Lakeshore Harbour has not satisfied its burden to prove that it held title to a segment of the rail corridor. The government has shown that Lakeshore Harbour did not own a segment of the rail corridor at the time of the alleged taking because Cole's owned it. Without a property interest, Lakeshore Harbour cannot establish a taking.

### B.   The court need not address Lakeshore Harbour's additional arguments

Lakeshore Harbour also moves for partial summary judgment on additional liability questions, arguing that recreational trail use exceeds the scope of the railroad easement and that the alleged taking is permanent. ECF No. 42 at 6, 14-23, 26. The government argues that it is premature to resolve those questions. ECF No. 54 at 15-16.

Because Lakeshore Harbour did not own any part of the rail corridor, "the court[']s task is at an end." *American Pelagic*, 379 F.3d at 1372. Any remaining liability questions related to an alleged taking from Lakeshore Harbour are moot.

---

[2] The government also cites a more recent email exchange among members of Lakeshore Harbour's homeowners' association discussing a Cole's offer to sell three parcels to the homeowners' association, including the land in the rail-trail corridor at issue. ECF No. 54 at 13-14; ECF No. 54-20. A representative of the homeowners' association noted that parcel no. 24-205-581-0006-00 "is likely encumbered by easements for the rail trail, the railroad right of way, … and the HOA based on the deed from Coles to the HOA for the 'Pool Development.'" ECF No. 54-20 at 3. He "question[ed] what part of this parcel is currently owned by Coles and given the right of way and easements of record," but he explained that he saw "no reason why the HOA would want to acquire this parcel. If Coles puts the parcel up for sale the HOA should consider recording the easement of access from Cole's so any buyer takes [the parcel] with notice of the easement." *Id.* He did not respond that Lakeshore Harbour already owned the parcel. *Id.* Lakeshore Harbour objects to the use of the email, arguing that it is inadmissible hearsay. ECF No. 46 at 10. While that email is being presented not for its truth but only as showing the association's understanding, the court need not and does not rely on that evidence in deciding the cross-motions.

### III. Conclusion

For the reasons stated above, the court **grants** the government's motion for partial summary judgment. The court **denies** Lakeshore Harbour's motion for partial summary judgment. The court **dismisses** Lakeshore Harbour as a party to this case.

There is no reason for delay, and thus, under this court's rule 54(b), the Clerk of the Court shall enter final judgment only against one of the plaintiffs, Lakeshore Harbour Townhouses Condominium. The Clerk of the Court shall also re-caption the case under the name of the next named plaintiff, 1950 Lakeshore Drive, LLC.

The remaining parties shall file their next joint status report in accordance with this court's September 30, 2024, order.

**IT IS SO ORDERED.**

 s/ Molly R. Silfen
MOLLY R. SILFEN
Judge