# In the United States Court of Federal Claims

1950 LAKESHORE DRIVE, LLC, *et al.*,

        *Plaintiff*,

v.

THE UNITED STATES,

        *Defendant*.

No. 22-902L
(Filed February 27, 2025)

Michael J. Smith, Stewart, Wald & Smith, LLC, St. Louis, MO, for plaintiffs.

John K. Heise, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Denying Lakeshore Harbour's Motion for Reconsideration of the Court's Judgment**

**SILFEN,** *Judge.*

      The court recently granted the government's motion for partial summary judgment and denied Lakeshore Harbour's cross-motion on whether Lakeshore Harbour is the owner of the land of which it is alleging a taking. The court explained that there was no genuine issue of material fact, that Lakeshore Harbour failed to establish that it owned the segment of the rail corridor abutting its property, and that Lakeshore Harbour therefore could not prove a taking. The court dismissed Lakeshore Harbour as a party to the case.

      Lakeshore Harbour now requests that the court reconsider its decision under this court's rule 59(a). Lakeshore Harbour argues that the court made one error of law—misinterpreting the centerline presumption—and two mistakes of fact—wrongly believing that the Cole's mortgage and Cole's tax payments cover the rail corridor.

1

Lakeshore Harbour fails to show that the court committed a legal error on the centerline presumption. Lakeshore Harbour also fails to prove that any factual mistake would change the outcome. Thus, the court **denies** Lakeshore Harbour's motion for reconsideration.

I.  **Discussion**

The bar to succeed on a motion for reconsideration of a final judgment under rule 59 is high. The court may grant reconsideration only if Lakeshore Harbour shows "extraordinary circumstances which justify relief." *Biery v. United States*, 818 F.3d 704, 711 (Fed. Cir. 2016) (marks and citation omitted); *see also Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988). Extraordinary circumstances arise when the court makes a manifest error of law or mistake of fact that, if corrected, could affect the outcome. *Parsons ex rel. Linmar Property Management Trust v. United States*, 174 F. App'x 561, 563 (Fed. Cir. 2006); *Ak-Chin Indian Community v. United States*, 85 Fed. Cl. 636, 639 (2009) (denying reconsideration "[b]ecause the error of fact to which defendant points is not one on which the outcome of the court's decision depends" and therefore was not a manifest injustice); *see also Hudson Furniture, Inc. v. Mizrahi*, No. 2022-1290, 2022 WL 16954854, at *2 (Fed. Cir. Nov. 16, 2022) (applying the Second Circuit's rule that "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court").

To prove manifest error or mistake, the movant must show: "(1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that [a modification] is necessary to prevent manifest injustice." *Parsons*, 174 F. App'x at 563. "Manifest injustice … refers to injustice that is apparent to the point of being almost indisputable." *Pacific Gas & Electric Co. v. United States*, 74 Fed. Cl. 779, 785 (2006). Given the high standard,

the court evaluates "not whether the court's conclusion … was correct … but rather whether the court's factual conclusion is clearly a result of mistakes." *Id.* (cleaned up).

Reconsideration is appropriate when the court patently misunderstood a party, made a decision outside of the adversarial issues presented by the parties, or made an error of apprehension, not of reasoning. *Delaware Valley Floral Group, Inc. v. Shaw Rose Nets, LLC*, 597 F.3d 1374, 1384 (Fed. Cir. 2010) (applying Eleventh Circuit law); *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). The court will not grant a motion for reconsideration when the movant merely restates arguments previously made and considered by the court or when the movant raises entirely new subjects that it could have raised earlier. *Ammex, Inc. v. United States*, 52 Fed. Cl. 555, 557 (2002); *Lee v. United States*, 130 Fed. Cl. 243, 253 (2017), *aff'd*, 895 F.3d 1363 (Fed. Cir. 2018). A motion for reconsideration "is not intended to give an unhappy litigant an additional opportunity to persuade the court to accept its arguments." *Multiservice Joint Venture, LLC v. United States*, 374 F. App'x 963, 967 (Fed. Cir. 2010).

A. **Lakeshore Harbour does not show a manifest error of law**

Lakeshore Harbour argues that the court erred in its interpretation of Michigan's centerline presumption. ECF No. 57. According to Lakeshore Harbour, the presumption applies broadly—not only when a conveyance references, for example, plat numbers—and the plain language of the deed here does not overcome the presumption. *Id.* at 1, 3-15, 34. Under the court's legal interpretation, Lakeshore Harbour argues, "every property description that identifies a public way as a boundary would serve as an intention to retain the fee simple in the public way," which would "render the presumption completely meaningless." *Id.* at 4-7, 10-11. Lakeshore Harbour asserts that the court's interpretation runs counter to Michigan law and Federal Circuit precedent. *Id.* at 4-7, 10-15. Lakeshore Harbour adds that the court misapplied even its own stricter standard because the deed here begins by referencing a map, lot, and block number. *Id.* at 4.

Across the states that apply the common-law centerline presumption, "[g]enerally, a conveyance by a description referring to a plat or map which shows the land as bounded by a street or highway conveys title to the center of such street or highway, unless a contrary intention appears." 11 C.J.S. Boundaries § 73 (2024). But also, "[g]enerally, a conveyance of land calling, expressly or in effect, for the side line of a street or highway excludes the street or highway from the grant, in the absence of any language in the deed, or any circumstances, indicating a contrary intention." *Id.* § 74.

Here, the deed's description of the conveyed parcel begins, "That part of lot 6, block 581, of the revised plat of 1903 of the City of Muskegon as recorded in liber 3 of plats, on page 71, described as beginning at a point on the southwesterly line of lot 6, (also being the southwesterly line of block 581), that is 170.00 feet north 36º 16' 55" west from the southeast corner of block 581; thence along the southwesterly line of lot 6, block 581, north 36º 16' 55" west 188.87 feet to the southeasterly right-of-way line of the CSX Railroad." ECF No. 42-14 at 10. It continues, similarly describing each border of the parcel with cardinal directions and precise longitude and latitude coordinates. *Id.* It ends, "Containing 2.02 acres." *Id.*

The court's decision explained that the deed defined the parcel's boundaries using precise metes and bounds and included the parcel's acreage, and that that specific language rebutted the centerline presumption by showing that Cole's did not intend to also convey half of the abutting rail corridor. ECF No. 55 at 3-5, 10-11. The deed's specificity was sufficient under Michigan law to prove that Cole's did not intend to convey the additional land from the edge of the parcel to the centerline of the rail corridor. *Id.* at 10-11. The decision contrasted the deed here with conveyances that describe a parcel only with reference to lot and block numbers. *Id.* (citing *Nordberg v. Todd*, 254 Mich. 440, 444-45 (1931); *Faulks v. Schrider*, 99 F.2d 370, 372-73 & n.5 (D.C. Cir. 1938)).

4

Contrary to Lakeshore Harbour's argument, the decision does not limit the centerline presumption to deeds that reference maps, lot, and block numbers, nor does it hold that any reference to those means the centerline presumption applies. *See* ECF No. 55 at 10-11. Rather, the decision explains that, when a deed relies on map, block, and lot numbers *alone*, the presumption applies, but when a deed uses more specific language, like the cardinal directions and precise geographic coordinates used in Lakeshore Harbour's deed, that language may show an intent not to convey half of a right-of-way that was outside the described boundaries. *Id.* at 11.

This court's interpretation is consistent with the Supreme Court's explanation in *Banks v. Ogden* that "a grant of land bordering on a road or river, carries the title to the centre of the river or road, unless the terms or circumstances of the grant indicate a limitation of its extent by the exterior lines" and that the grantor "retain[s] every part of which he did not divest himself by deed or dedication." 69 U.S. 57, 68-69 (1864). Under *Ogden* and its progeny, the mere reference to a right-of-way as a parcel's boundary does not necessarily overcome the centerline presumption. *See id.*; *Faulks*, 99 F.2d at 372 (explaining that the centerline presumption can apply to "a deed of land which describes it as bounding upon a street"). But if, in describing a boundary line, the deed makes clear that the parcel excludes the right-of-way, that overcomes the centerline presumption. *E.g.*, *Minerva Partners, Ltd. v. First Passage, LLC*, 731 N.W.2d 472, 478 (Mich. Ct. App. 2007). Here, the Lakeshore Harbour deed explains that the property line extends only up "to the southeasterly right-of-way line of the CSX Railroad" and, thus, excludes any part of the rail corridor. ECF No. 42-14 at 10.

This court's decision aligns with Michigan law. In *Minerva Partners*, the Michigan Court of Appeals clarified that, although *Loud v. Brooks*, 217 N.W. 34, 34-35 (Mich. 1928), established the centerline presumption, "the language of the deed still controls," and courts must "follow the

5

plain language in a deed in which there is no ambiguity." 731 N.W.2d at 478 (marks and citation omitted); *see also Carruthers v. Frederic S. Shaffer Jr. Family LP., II*, No. 319091, 2015 WL 774461, at *6 (Mich. Ct. App. Feb. 24, 2015) ("The rule reflected in … *Loud* … holds true unless something appears upon the plat, or in the terms of the conveyance, excluding the title from passing." (cleaned up)). Thus, the court explained, "[i]f the deed, on its face, indicates that a grantee has received title to the land adjacent to a road, but not to the land under a road, the terms of that deed must be enforced." *Minerva Partners*, 731 N.W.2d at 478.

The Michigan Court of Appeals explained that a metes-and-bounds description of the transferred property, which identified "the northwest boundary of the property as the southeast right-of-way of [the] Road," "excluded the transfer of any portion of the property under the road." *Minerva Partners*, 731 N.W.2d at 475 & n.2, 478. In contrast, where a later deed transferred "[t]he Southeast quarter of the Southwest quarter, except: … that part South and Easterly of the road," then "title to the land under the road vested in" the grantee. *Id.* at 475, 478 (cleaned up). When another set of deeds "indicated that the property was bounded by the northwest right-of-way line of the road," those "deeds did not transfer title to land under the road to the purchasers of the property." *Id.*; *see also Grand Rapids & Indiana Railroad Co. v. Heisel*, 38 Mich. 62, 64, 72 (1878) (before *Loud*, Michigan Supreme Court holding that a deed's description of a parcel as bounded by the eastern line of a street was sufficient to overcome the common-law centerline rule and exclude the street); 3 Mich. Civ. Jur. Boundaries and Surveys § 54.

Lakeshore Harbour does not point to any case applying Michigan law and applying the centerline presumption where there is language that is similarly precise to its own deed (*see generally* ECF No. 57), nor has the court found any. Lakeshore Harbour analogizes its case to the Federal Circuit's decision in *Castillo v. United States*, 952 F.3d 1311, 1322-23 (Fed. Cir. 2020).

ECF No. 57 at 11-15. *Castillo* applied Florida law and also does not mean what Lakeshore Harbour thinks it means. In *Castillo*, the Federal Circuit held that, because the deed "language did not refer to the edge of the [right-of-way] as the boundary" but instead described the parcel as east of the right-of-way as a whole, referring to the right-of-way as a landmark, the deed did not overcome the centerline presumption. 952 F.3d at 1322 (analogizing to another Florida case). That conclusion was supported by the rest of the deed, which elsewhere excluded a rail corridor. *Id.* at 1323. The description of Lakeshore Harbour's boundary, in contrast to *Castillo*, refers to the rail corridor by its southeasterly boundary (ECF No. 42-14 at 10). Thus, the plain language of Lakeshore Harbour's deed rebuts the centerline presumption. *See* ECF No. 55 at 10-11.

While the deed here refers to a map and block and lot numbers, it goes further. The deed otherwise describes the parcel's boundaries, which go up to, and along, but exclude the rail corridor. The use of "[s]uch expressions as 'on southerly line,' 'by the side of,' 'running along easterly side of,' … [and] 'running with the westerly boundary line [of],' … a street or highway do not pass the fee to the center thereof." 11 C.J.S. Boundaries § 74 (2024); Boundaries on ways, 4 Tiffany Real Prop. § 996 (3d ed.) ("A description of the land as bounded by or on the 'side,' 'margin,' or 'edge' of the highway has more usually been regarded as showing an intention to exclude the land within the highway limits from the operation of the conveyance, and a reference to the 'line' of the road, either without any prefix, or with a prefix, such as south or west, showing that the side of the road is meant, has been given a like effect."). Here, the description's reference "to the southeasterly right-of-way line of the CSX Railroad" (ECF No. 42-14 at 10) shows an intent not to convey any part of the rail corridor. *See* ECF No. 55 at 10-11. There was no manifest error in the initial conclusion that the deed rebutted the centerline presumption in this case. *See* ECF No. 55 at 12.

### B.    Any factual mistake would not change the outcome

Lakeshore Harbour argues the court made two mistakes of fact in finding that Cole's took out a mortgage and was assessed for and paid property taxes on land that included the relevant segment of the rail corridor. ECF No. 57 at 1-2, 15-34. Lakeshore Harbour asserts that there is at least "a genuine issue of material fact that makes entry of summary judgment inappropriate." *Id.* at 33.

Contrary to Lakeshore Harbour's argument, "the matter of ownership" in this case does not depend on "whether the mortgage does or does not describe the land subject to the railroad easement." ECF No. 57 at 16. Even if Lakeshore Harbour were correct that the land Cole's mortgaged and pays property taxes on does not include the segment of land at issue here, the court's judgment did not turn on the mortgage or property taxes, so the argument cannot justify reconsideration. *See Pacific Gas & Electric*, 74 Fed. Cl. at 785.

The court's decision explained that the government could overcome the centerline presumption in either of two ways: "(1) by pointing to evidence from the master deed that Cole's did not intend to convey any more than the described parcel, that is, that Cole's did not intend to convey land going up to the centerline, or (2) by presenting evidence that the land subject to the railroad easement is owned by someone else, in this case Cole's." ECF No. 55 at 10. As explained in the decision and reiterated above, the government successfully rebutted the centerline presumption in the first way. ECF No. 55 at 10-11; *supra* I.A. The government did not also need to show that someone else owned the land subject to the railroad easement. Even so, the government did "alternatively succeed[] under the second prong" by showing that someone else (Cole's) owned the relevant segment. ECF No. 55 at 11. It was under the alternative theory that the court relied on the government's statements about Cole's mortgage and tax history. *Id.* at 11-12.

Lakeshore Harbour argues that neither the Cole's mortgage nor the Cole's tax payments covered the land at issue here. ECF No. 57 at 15-32. Lakeshore Harbour argues that the boundaries of the mortgaged property are south, not north, of block 581. *Id.* at 22-28. And, in its final three pages, it asserts that there would not be taxes owed on a rail corridor. *Id.* at 30-33. While the court is not convinced that Lakeshore Harbour has shown a manifest mistake of fact, it also does not matter. The court determined that the government rebutted the centerline presumption independently of whether Cole's took out a mortgage or paid property taxes on the relevant segment of the rail corridor. Any alleged mistake had no effect on the outcome. Any factual error that "is of no substantive consequence to the court's opinion" is harmless and does not merit reconsideration. *E.g.*, *Ak-Chin Indian Community*, 85 Fed. Cl. at 639. Thus, Lakeshore Harbour fails to establish that the court made a mistake of fact sufficient to warrant reconsideration.

## II.    Conclusion

For these reasons, the court **denies** Lakeshore Harbour's motion to reconsider its decision to grant partial summary judgment in favor of the government.

    **IT IS SO ORDERED.**

                                                                                           s/ Molly R. Silfen
                                                                              MOLLY R. SILFEN
                                                                              Judge